IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FILED

MAR 2 9 2013

CLERK, US DISTRICT COURT
NORFOLK, VA

MARY JANE GLASER,

   Plaintiff

v.

MICHAEL J. ASTRUE,

   Defendant.

CIVIL NO. 2:11cv213

## OPINION AND ORDER

This matter comes before the Court upon Mary Jane Glaser's ("Plaintiff") objections to the Report and Recommendations of the Magistrate Judge. Pl.'s Objs., ECF No. 13. For the reasons set forth herein, the Court: (1) **ACCEPTS** the Magistrate Judge's Report and Recommendations, ECF No. 21; (2) **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"); (3) **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 15; and (4) **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 18.

## Contents

I.     PROCEDURAL BACKGROUND ................................................................2
II.    FACTUAL BACKGROUND ....................................................................3
       A.   MEDICAL EVIDENCE IN THE RECORD ................................................4
       B.   TESTIMONY DURING THE NOVEMBER 19, 2008 ADMINISTRATIVE
            HEARING...........................................................................10
       C.   THE ALJ'S DECISION.............................................................11
III.   STANDARD OF REVIEW ....................................................................13
IV.    DISCUSSION ............................................................................15
       A.   THE ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY .........................16

1

| | 1. | The ALJ's Reliance on Objective Evidence in Making a Credibility Determination Concerning Plaintiff's Testimony | 16 |
| B. | | THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE | 19 |
| C. | | THE ALJ'S ASSESSMENT OF MEDICAL OPINION EVIDENCE | 22 |
| | 1. | The ALJ Properly Assessed the Medical Opinion Evidence of Plaintiff's Treating Physicians and the State Agency Medical Consultant | 23 |
| | 2. | The ALJ Properly Assessed the Medical Opinion Evidence of the State Agency Physicians | 26 |
| V. | | CONCLUSION | 27 |

## I.   PROCEDURAL BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act on September 10, 2009,[1] alleging disability since June 1, 2001. R. 109-23. Plaintiff states her filing is due to lupus, fibromyalgia, irritable bowel syndrome, Epstein-Barr syndrome, chronic fatigue syndrome, restless leg syndrome, and a bulging disk in her neck. R. 163. The Social Security Administration denied Plaintiff's application at the initial level on May 11, 2007, and the reconsideration level on August 7, 2007. R. 62-76.

Plaintiff then requested a hearing by an Administrative Law Judge ("ALJ"). R. 91. On November 19, 2008, Plaintiff testified at an administrative hearing and was represented by counsel. R. 28-58. A vocational expert also appeared and testified at that hearing. R. 53-57.

On January 23, 2009, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. R. 27. The Appeals Council denied Plaintiff's request for administrative review of the ALJ's decision. R. 9-13. Therefore, the ALJ's decision stands as the final decision of the Commissioner for purposes of judicial review. See 42 U.S.C. § 405(g); Id. at § 1383(c)(3); 20 C.F.R. § 404.981; Id. at § 416.1481.

---

[1] Page citations are to the administrative record.

Pursuant to 42 U.S.C. § 405(g), Plaintiff timely filed the instant action for judicial review of Defendant's final decision. Plaintiff filed her Motion for Summary Judgment on March 15, 2012. ECF No. 15. Defendant filed his Motion for Summary Judgment on May 15, 2012. ECF No. 18. The matter was then referred to a United States Magistrate Judge pursuant to: (1) 28 U.S.C. § 636(b)(1)(B) and (C); (2) Rule 72(b) of the Federal Rules of Civil Procedure; and (3) Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. The Magistrate Judge's Report and Recommendations, issued on November 21, 2012, recommends that Plaintiff's Motion for Summary Judgment be DENIED, Defendant's Motion for Summary Judgment be GRANTED, and the decision of the Commissioner be AFFIRMED. ECF No. 21.

Plaintiff filed her objections to the Magistrate Judge's Report and Recommendations on November 29, 2012. Pl.'s Objs., ECF No. 22. Defendant filed his response to those objections on December 5, 2012. Def.'s Resp., ECF No. 23.

## II.    FACTUAL BACKGROUND

Plaintiff is a 48- year old individual with a high school education. R. 18. In the past she has worked as a 911 dispatcher and as an office clerk. R. 18. Her claim for DBI and SSI is based on issues with lupus, fibromyalgia, irritable bowel syndrome, Epstein-Barr syndrome, chronic fatigue syndrome, restless leg syndrome, and a bulging disk in her neck. R. 163. Plaintiff states that these issues first troubled her in 1998, and she became unable to work because of these conditions on June 1, 2001. R. 163. Plaintiff reports that, because of these conditions, she: (1) is unable to sit or stand for long periods of time; (2) is unable to write due to pain; (3) is in constant pain; (4) is regularly tired; (5) cannot lift her arms over her head; (6) has trouble concentrating; (7) has skin sensitivity; and (8) has trouble sleeping. R. 163.

3

## A. MEDICAL EVIDENCE IN THE RECORD

In 2001, at the time Plaintiff left her most recent job, Plaintiff's primary physician was Heather Stark, M.D. R. 36. Plaintiff's first appointment with Dr. Stark after she stopped working was on June 14, 2001. At that appointment, Dr. Stark treated Plaintiff for sinusitis, as well as head and neck pain. R. 246, 253. Two weeks later, on June 28, 2001, again met with Dr. Stark and reported feeling better with reduced head and neck pain. Dr. Stark prescribed medication for cervical muscle spasms at that appointment. R. 245. On August 20, 2001, Dr. Stark prescribed additional medication for plaintiff's neck spasm in response to a phone call. R. 245. During this time, Plaintiff also took anxiety related medication. R. 42.

On December 10, 2002, on a referral from Dr. Stark, Plaintiff visited Scott A. Miller, M.D. concerning her chronic fatigue, fibromyalgia issues, and cigarette use. R. 282. At that appointment, Plaintiff was recovering from an upper-respiratory infection and complained of: (1) discomfort in her neck, between her shoulder blades, under her ribs, into her knees, and in her lower back; (2) an occasional sore throat; and (3) difficulty with concentration and dizziness. R. 282. During the examination, Dr. Miller noted tenderness in the usual fibromyalgia trigger points, but found no significant edema in Plaintiff's extremities. R. 282.

On April 20, 2003, Plaintiff went to the Shore Memorial Hospital emergency room complaining of chest pain. R. 280, 326-28. Plaintiff was admitted overnight, but testing showed that her cardiac enzymes were normal and a stress test was non-diagnostic. R. 280, 326-28. At discharge the next day, Plaintiff's diagnosis was "[c]hest pain, possibly secondary to fibromyalgia." R. 280, 328.

On October 25, 2003, Plaintiff visited Eastern Shore Rural Health for a bladder infection. R. 393, 431. Plaintiff was treated for shingles, fibromyalgia, chronic fatigue syndrome, and Epstein Barr virus. R. 393, 431.

4

On November 26, 2003, Plaintiff returned to Dr. Stark with recurrent hip pain and irritable bowel syndrome. R. 391. Dr. Stark assessed fibromyalgia, chronic fatigue syndrome, and questionable right sciatica. R. 391.

In 2003, Plaintiff also made four visits to Dr. D.W. Gubb, M.D. for issues with shingles, medication refills, a sprained ankle, and headaches. R. 243-44. In April 2004, Plaintiff again visited Dr. Gubb complaining of headaches. R. 241-42. Later that month, Plaintiff underwent an MRI of her cervical spine based on Dr. Gubb's referral. R. 271. Dr. Shalini Agarwal, M.D. examined the MRI and reported that there was "mild posterior central disc protrusion at C6-7, [but] otherwise unremarkable." R. 271. Throughout 2004, Dr. Gubb treated Plaintiff for sore throat, fever, a swollen tongue, chronic fatigue, and Lyme shocks. R. 229, 234-36, 417-19. Dr. Gubb noted that he believed Plaintiff's back pain was due to a lumbar spasm, and he prescribed medication for that issue. R. 226-27.

Also in 2004, Dr. Gubb[2] referred Plaintiff to Robert Paschall, D.O. R. 238-39. Plaintiff complained of right radicular neck pain, arm pain, and recurrent shingles. R. 238. An MRI showed a mild posterior disk in the lower cervical spine at C6-7 without cord compression or foraminal stenosis. R. 238. On examination, Dr. Paschall noted that the Plaintiff's neck had full flexion and extension, and that she had full motor strength in all muscle groups. R. 239. Dr. Paschall further reported that Plaintiff had: (1) normal reflexes; (2) normal stance; (3) normal gait; (4) normal fine motor control; and (5) a normal sensory examination. R. 239. In late 2004, Plaintiff also underwent pain management therapy with Dr. Paschall. R. 289-90, 296.

---

[2] Plaintiff saw Dr. Gubb once in 2005 and then again in 2006. R. 223, 228. The 2006 appointment was the final appointment between Plaintiff and Dr. Gubb, and Dr. Gubb recommended Plaintiff see a rheumatologist. R. 228.

Dr. Paschall then referred Plaintiff to the Delmarva Surgery Center. R. 304. On July 30, 2004, Plaintiff went to Brent Fox, M.D. R. 304. A month before this appointment, Plaintiff had an injection to manage pain. R. 304. At the appointment, Plaintiff informed Dr. Fox that the injection was successful and she had been feeling much better. R. 304. Plaintiff continued to complain of neck and right-side shoulder pain but reported that her arm pain was better. R. 304. Dr. Fox followed up with another injection, and a month after that appointment, the Plaintiff reported feeling better with less neck pain and lesser need for further medication. R. 297, 304. In November 2004, Plaintiff again went to Dr. Fox for an injection. R. 291. Plaintiff reported at that appointment that the previous injection resulted in several weeks to even months of improvement. R. 291.

In 2007, after Plaintiff no longer had health insurance, she returned to Dr. Stark. R. 52. In June 2007, Plaintiff complained of shoulder pain. R. 477. Dr. Stark's notes reflect that she observed tender points and limited motion, but that the Plaintiff's reflexes and her range of motion in her cervical spine were normal. R. 477. Dr. Stark ordered an MRI and x-ray. R. 482-83. The MRI showed mild disc degeneration of Plaintiff's cervical spine, but no herniation or stenosis, and the x-ray was normal. R. 482-83.

A number of doctors filled out check-box questionnaires on Plaintiff's behalf. Dr. Stark indicated, on a "Rest Questionnaire," that Plaintiff required "complete freedom to rest frequently without restriction." R. 461. On a "Pain Questionnaire," Dr. Stark indicated that Plaintiff frequently experienced moderately severe pain, consistent with Dr. Stark's objective findings since 1999, and would be expected to miss "indefinite" days of work. R. 462. On a "Fibromyalgia Questionnaire," Dr. Stark indicated that plaintiff experienced: (1) widespread pain; (2) axial skeletal pain; and (3) tender point pain. R. 463. Dr. Stark indicated that

Plaintiff's symptoms included: (1) multiple tender points; (2) non-restorative sleep; (3) chronic fatigue; morning stiffness; (4) muscle weakness; (5) subjective swelling; (6) irritable bowel syndrome; (7) frequent, severe headaches; (8) numbness and tingling; (9) occasional breathlessness; and (10) difficulty concentrating. R. 464. Dr. Stark indicated that these symptoms met the American College of Rheumatology Guidelines for fibromyalgia. R. 464. Dr. Stark further specified that, for half of each day, Plaintiff could not perform activities requiring attention, concentration, memory, or reliability. R. 464-65. Dr. Stark also indicated that Plaintiff had depression, took medication, and would be expected to miss "indefinite" days of work. R. 464-65.

Dr. Stark, on a "Systemic Lupus Erythematosus" form, noted that Plaintiff's diagnoses included fibromyalgia, chronic fatigue syndrome, right cervical radiculitis, and irritable bowel syndrome. R. 466. According to Dr. Stark, Plaintiff's symptoms included shoulder, hip joint, and muscle pain, as well as right elbow joint swelling, leg and arm joint stiffness, lack of energy, loss of weight and appetite, oral or nasal ulcers, photosensitivity, fever, fatigue, malaise, weakness, and depression, which were exacerbated weekly by stress, physical exertion, fatigue, and sun exposure. R. 466, 468-69.

Almost a year later,[3] Dr. Stark completed three additional check-box forms for the Plaintiff. R. 492-94. In October 2008, Dr. Stark completed an "Exertional Limitations Questionnaire" which indicated that, since 1999, Plaintiff could not perform sedentary work on a sustained and full-time basis. R. 493. That same day, Dr. Stark completed a "Fatigue Questionnaire" indicating that, since 2001, Plaintiff experienced moderately severe fatigue, consistent with her diagnosis and clinical findings, which required Plaintiff to alter her daily activities and frequently interfered with her ability to maintain attention and concentration.

---

[3] Each of the aforementioned questionnaires was dated September 13, 2007.

7

R. 494. Dr. Stark indicated that stress contributed to the severity of Plaintiff's fatigue, and that fatigue interfered with Plaintiff's ability to deal with work stress. R. 494. Dr. Stark estimated that Plaintiff would miss more than two days of work each month due to her pain. R. 494.

Dr. Stark also completed an undated "Medical Assessment of Ability to do Work-Related Activities (Physical)" form, indicating that Plaintiff can sit, stand, and walk for no more than 10 to 15 minutes at a time, and no more than 1 hour each day, and can occasionally lift up to 5 pounds. R. 492.

In 2008, Dr. Gubb completed four check-box forms on the Plaintiff's behalf. R. 495-98. On an "Exertional Limitation Questionnaire," Dr. Gubb indicated that Plaintiff has been unable to perform sedentary work since June 30, 2005. R. 495. On a "Rest Questionnaire," he indicated that Plaintiff has required complete freedom to rest frequently and without restriction since June 30, 2005. R. 496. Dr. Gubb stated, on a "Pain Questionnaire," that Plaintiff frequently experienced moderately severe pain, consistent with his objective findings, that constantly interferes with her ability to maintain attention and concentration, and as a result Plaintiff would be expected to miss more than two days of work each month. R. 497. On the "Medical Assessment of Ability to do Work-Related Activity (Physical)" form Dr. Gubb noted that, since June 30, 2005, Plaintiff could be expected to sit, stand, and walk for less than 1 hour each day, could never lift up to 5 pounds, and could never perform postural activities. R. 498-99. Additionally, Dr. Gubb indicated that Plaintiff's ability to reach, handle, feel, and push/pull are affected by her impairments, and she should be restricted from exposure to extreme temperatures and bright lights. R. 499.

In filing for DBI and SSI, Plaintiff underwent an examination at the request of the Social Security Administration. On April 9, 2007, Plaintiff was examined by Mark Clarke, M.D.

R. 360-63. Plaintiff told Dr. Clarke that she was applying for disability because of lupus, fibromyalgia, bulging disks in the neck, and chronic pain. R. 360. Plaintiff also said she had restless legs which inhibited sleep and at times required a cane. R. 360. Plaintiff further complained of headaches, and said that she developed a red rash when out in the sun. R. 360. On examination, Dr. Clarke noted a limited range of motion in Plaintiff's spine, multiple tender trigger points, and mild crepitus of the right shoulder, but also noted that Plaintiff had a normal range of motion in her other joints and a normal neurological exam. R. 362. Dr. Clarke's impression was that Plaintiff suffered from chronic pain due to fibromyalgia and degenerative joint disease of multiple areas, had a questionable history of lupus, and suffered from irritable bowel syndrome, restless legs, depression, and anxiety. R. 362. Dr. Clarke stated that Plaintiff "would have difficulty doing any physical labor due to her multiple joint and muscle aches and pains," and that "chronic pain and depression would also make it difficult for her to concentrate on clerical tasks." R. 363.

On May 10, 2007, Robert Gerstle, Ph.D., a state agency psychologist, reviewed the medical evidence of record and opined that Plaintiff's mental impairments were not severe. R. 366-78. On July 31, 2007, David Deaver, Ph.D., a second state agency psychologist, reviewed the medical evidence of record and affirmed Dr. Gerstle's opinion. R. 453.

On May 11, 2007, Michael Cole, D.O., a state agency physician, reviewed the evidence of record and opined that plaintiff's physical impairments would not prevent her from occasionally lifting up to 20 pounds, frequently lifting up to 10 pounds, standing and/or walking about 6 hours during an 8-hour workday, and sitting about 6 hours during an 8-hour workday. R. 380-83. He also found that Plaintiff could frequently balance, kneel and crawl, and could occasionally climb, stoop, and crouch. R. 381. Dr. Cole noted that x-rays showed only mild

9

degenerative disc disease, that Plaintiff's activities of daily living were not severely limited, and that her muscle strength and nerve function were within normal limits. R. 385. On August 7, 2007, Dr. Patricia Staehr, M.D., a second state agency physician, reviewed the evidence of record and reached the same conclusions as Dr. Cole. R. 454-460. Specifically, Dr. Staehr found that Plaintiff's physical impairments would not prevent her from occasionally lifting up to 20 pounds, frequently lifting up to 10 pounds, standing and/or walking about 6 hours during an 8-hour workday, and sitting about 6 hours during an 8-hour workday. R. 455. She also found that Plaintiff could frequently balance, kneel and crawl, and could occasionally climb, stoop, and crouch. R. 456. Dr. Staehr noted that Plaintiff's: (1) x-rays showed only mild degenerative disc disease; (2) daily activities were not severely limited; (3) muscle strength and nerve function remained within normal limits; and (4) most recent examination was within normal limits. R. 460.

### B.   TESTIMONY DURING THE NOVEMBER 19, 2008 ADMINISTRATIVE HEARING

On November 19, 2008, Plaintiff testified at an administrative hearing and was represented by counsel. R. 28-58. A vocational expert also appeared and testified regarding the vocational aspects of the case. R. 53-57.

According to her testimony, Plaintiff lives at home with her family, which includes her husband and, at the time of the ALJ hearing, a 16-year old child and a 4-year old cousin. R. 33. Plaintiff testified that, although she is the legal guardian of her 4-year old cousin, her husband primarily cares for the child. R. 51. At home, Plaintiff's husband does most of the cooking, but Plaintiff is able to hold a knife and make a sandwich. R. 45-47. Plaintiff is also able to hold a toothbrush, brush her hair, and care for her general personal hygiene. R. 45-46. Plaintiff occasionally drives. R. 33.

10

Mr. Malanson, a vocational expert, also testified at the hearing. Mr. Malanson was asked to consider a hypothetical individual of Plaintiff's same age with the same education and work background. R. 54. The ALJ stated that the hypothetical individual could perform light work activity with no more than occasional postural activities and no climbing of ladders, ropes or scaffolds, or concentrated hazards. R. 55. The ALJ also stated that the individual could only perform unskilled work. R. 55.

The vocational expert testified that a hypothetical individual with these limitations could perform work as an office clerk, which was Plaintiff's previous job. R. 55. Additionally, Mr. Malanson testified that a person with Plaintiff's limitations could perform work at the light exertional level, such as a cashier or an order clerk, and work at the sedentary exertional level, in jobs such as an information clerk or clerical sorter. R. 55.

## C.    THE ALJ'S DECISION

To qualify for DIB under the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the:

> inability to do any substantial gainful activity[4] by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[4] "Substantial gainful activity" is work that (1) involves doing significant and productive physical or mental duties; and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572.

[5] "Physical or mental impairment" is defined in section 223(d)(3) of the Social Security Act, Title 42 U.S.C. § 423(d)(3), as an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A). To meet this definition, the claimant must have a "severe impairment"[6] which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see also 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must consider whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments; (4) has an impairment which prevents past relevant work; and (5) has an impairment that prevents him from any substantial gainful employment. An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920.

The ALJ issued her opinion on January 23, 2009, addressing all five steps of the sequential analysis in determining that Plaintiff is not disabled. R. 17-27. The ALJ found the following concerning Plaintiff's condition. First, Plaintiff met the insured status requirements of the Act through June 30, 2005. R. 19. Second, Plaintiff has not engaged in substantial gainful activity since June 1, 2001, the alleged onset date of disability. R. 19. Third, Plaintiff suffered from the following severe impairments: (1) discogenic back and neck disorder; (2) fibromyalgia/chronic fatigue; and (3) obesity. R. 19. This finding was based on

---

[6] The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c).

examinations, tests, and reports from Plaintiff's treating physicians. R. 19. Fourth, Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21. This finding is supported by the lack of objective evidence that any musculoskelete or inflammatory disease existed for Plaintiff that meets the specific requirements. R. 21. Fifth, the ALJ found that Plaintiff has the ability to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), as long as Plaintiff is limited to only occasional postural activities, and that Plaintiff is limited to unskilled work. R. 22. The ALJ reached this conclusion based on her evaluation of Plaintiff's allegations of pain in comparison to Plaintiff's testimony regarding her daily life. R. 22-23. Plaintiff's impairments, supported by medical evidence, could be expected to cause the alleged symptoms, but Plaintiff's statements concerning the severity of the symptoms were deemed to be not credible in light of Plaintiff's statements regarding her day-to-day activities, as well as the objective evidence set forth in the record. R. 23.

## III.   STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews de novo any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

"Determination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); see also Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam). "The claimant has the burden of production and proof in Steps 1-4. At Step 5, however, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citing

13

Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)) (internal citation omitted) (internal quotation omitted). If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. Id. (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

First, the claimant must demonstrate that she is not engaged in substantial gainful activity at the time of application. 20 C.F.R. § 404.1520(b). Second, the claimant must prove that he has "a severe impairment . . . which significantly limits . . . [his] physical or mental ability to do basic work activities." Id. § 404.1520(c). Third, if the claimant's impairment matches or equals an impairment listed in appendix one of the Act, and the impairment lasts—or is expected to last—for at least twelve months, then the claimant is disabled. Id. § 404.1520(d); see 20 C.F.R. pt. 404 subpart P app. 1 (listing impairments). If, however, the impairment does not meet one of those listed, then the ALJ must determine the claimant's residual functional capacity ("RFC"). The RFC is determined based on all medical or other evidence in the record of the claimant's case. Id. § 404.1520(e). Fourth, the claimant's RFC is compared with the "physical and mental demands of [the claimant's] past relevant work." Id. § 404.1520(f). If it is determined that the claimant cannot meet the demands of past relevant work then, fifth, the claimant's RFC and vocational factors are considered to determine if he can make an adjustment to other work. If the claimant cannot make such an adjustment, then he is disabled for purposes of the Act. Id. § 404.1520(g)(1).

The Court's review of this five-step inquiry is limited to determining whether: (1) the decision was supported by substantial evidence on the record; and (2) the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson, 434 F.3d at 653. "If the Commissioner's decision is not supported by substantial evidence in the record, or if the ALJ has

made an error of law, the Court must reverse the decision." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). In deciding whether to uphold the Commissioner's final decision, the Court considers the entire record, "including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (quoting Wilkins v. Sec'y, Dept. of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 434 F.3d at 650 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). In performing its review, the court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." Hancock, 667 F.3d at 472 (quoting Johnson, 434 F.3d at 653). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. (quoting Johnson, 434 F.3d at 653).

## IV.   DISCUSSION

Plaintiff objects to the Magistrate Judge's Report and Recommendations on a number of grounds. First, Plaintiff argues that the ALJ erred in his credibility determination by looking to "the 'benign objective' evidence" of Plaintiff's fibromyalgia, such that "the anlaysis proceeds from a false premise that the lack of 'objective' evidence supports a finding" that Plaintiff's complaints are not credible. Pl.'s Objs. 6-8, ECF No. 22. Second, Plaintiff argues that the ALJ's decision contains misstatements of fact and relies on an impermissible "sit and squirm" analysis. Pl.'s Objs. 8-11, ECF No. 22. Third, Plaintiff objects to the ALJ's weighting of medical opinion

evidence. Pl.'s Objs. 11-14, ECF No. 22. Fourth, Plaintiff argues that, if the Court remands the matter for reconsideration, it should order that a medical expert be called to determine whether evidence of disability after Plaintiff's date of last insured can create a "retrospective inference" of disability during the relevant period. For the reasons set forth in this Part of the Opinion and Order, the Court finds that Plaintiff's first three arguments do not warrant remand or reversal. Because remand is unnecessary, the Court will not address Plaintiff's fourth argument.

## A.    THE ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY

### 1.    The ALJ's Reliance on Objective Evidence in Making a Credibility Determination Concerning Plaintiff's Testimony

Plaintiff argues that the ALJ erred in her credibility determination by looking to "the 'benign objective' evidence" of Plaintiff's fibromyalgia, such that "the anlaysis proceeds from a false premise that the lack of 'objective' evidence supports a finding" that Plaintiff's complaints are not credible. Pl.'s Objs. 6-11, ECF No. 22. The Court rejects that argument and finds that the ALJ properly evaluated Plaintiff's credibility by reference to the medical record.

After step three of the ALJ's five-part analysis, but prior to deciding whether a claimant can perform past relevant work at step four, the ALJ must determine a claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 416.920(e)-(f); Id. at § 416.945(a)(1). The RFC determination must incorporate impairments supported by objective medical evidence, as well as impairments based on credible complaints advanced by the claimant. The ALJ uses a two-step analysis in evaluating a claimaint's subjective complaints. See Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006) ("SSR 90-1p and its successors establish a two step process that comports with applicable Fourth Circuit precedent." (citing Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992) (per curiam)).

First, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably produce the claimant's pain or symptoms. Craig, 76 F.3d at 594. In doing so, the ALJ must consider all relevant medical evidence in the record. Id. If the underlying impairment could reasonably be expected to produce the claimant's pain then, second, the ALJ must evaluate the claimant's statements about the intensity and persistence of the pain, as well as the extent to which it affects the individuals' ability to work. Id. at 595. The ALJ's evaluation must take into account all available evidence, including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the claimant's subjective statements. Id. at 595-96.

Plaintiff correctly notes that, pursuant to the ruling in Hines v. Barnhart, in this Circuit a plaintiff is entitled to rely exclusively on subjective evidence when satisfying this part of the test. But, that alone is an inadequate representation of the relevant legal standard. The Fourth Circuit went on in Hines to state that

> While objective evidence is not mandatory at the second step of the test, [t]his is not to say . . . that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

Hines, 453 F.3d at 565 n.3 (emphasis added).

Plaintiff argues that the ALJ impermissibly relied on objective evidence in making a credibility determination concerning Plaintiff's testimony about her pain and symptoms. To advance that argument, Plaintiff claims error because: (1) the ALJ rejected Plaintiff's testimony concerning the severity of her pain based exclusively on "benign objective findings"; and

17

(2) policy prohibits analyzing pain relating to fibromyalgia solely in terms of a lack of objective proof. Pl.'s Objs. 6, ECF No. 22. Unfortunately for Plaintiff, those points evidence a fundamental misunderstanding of the law

Pursuant to Hines, Plaintiff was "entitled to rely exclusively on subjective evidence"— i.e., her hearing testimony—in her effort to establish that the pain from her fibromyalgia "is so continuous and/or so severe that" that it renders the plaintiff disabled. Hines, 453 F.3d at 565. But, Hines clearly does not foreclose an ALJ's consideration of objective evidence in making a credibility determination concerning Plaintiff's testimony. Rather, Hines states that an ALJ need not accept those allegations insofar as they are inconsistent with available evidence, "including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain." Id. at 565 n.3.

In this case, the ALJ determined that the medical conditions cited by Plaintiff could reasonably produce Plaintiff's pain or symptoms, but the ALJ also found Plaintiff's testimony was not credible. R. 23-25. In making her credibility determination, the ALJ looked to inconsistencies in Plaintiff's testimony regarding the pain she experienced and her day-to-day activities. The ALJ also pointed to the objective medical evidence, all of which showed that, while Plaintiff had mild degenerative joint disease, mild posterior central disc protrusion, muscle tenderness, and some tender points, she also demonstrated almost complete range of motion at her joints and a normal range of motion in her cervical spine. R. 23. This led the ALJ to find that "[t]hese relatively benign objective findings do not support claimant's allegations of complete incapacitation." R. 23.

Thus, the ALJ did not ignore Plaintiff's subjective evidence concerning her disability. Rather, in accordance with Hines, the ALJ looked to objective evidence of the underlying

impairment in the medical record to assist her in making a credibility determination. The Court finds no error in the ALJ's assessment of Plaintiff's credibility, and further finds that her conclusions concerning Plaintiff's credibility are supported by substantial evidence.

**B.    THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff argues that the ALJ, in justifying his credibility determination concerning Plaintiff's testimony, misstates facts from the medical record and relies on an impermissible "sit and squirm" analysis. Pl.'s Objs. 8-11, ECF No. 22. According to Plaintiff, remand is necessary because the Court cannot reweigh the evidence after discounting any impermissible justification set forth in an ALJ's decision. Pl.'s Objs. 11, ECF No. 22 (alleging that acceptance of the Magistrate Judge's recommendation requires "a <u>reweigh</u> of the evidence").

In conducting its review of the Commissioner's disability determination, the Court must ensure that an ALJ's decision is supported by substantial evidence on the record. 42 U.S.C. § 405(g); <u>Johnson</u>, 434 F.3d at 653. Only if the decision is not supported by substantial evidence in the record will the Court reverse the decision. <u>Coffman</u>, 829 F.2d at 517. "Substantial evidence is such relevant evidence as <u>a reasonable mind might accept as adequate to support a conclusion.</u>" <u>Johnson</u>, 434 F.3d at 650 (emphasis added) (quoting <u>Craig</u>, 76 F.3d at 589). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Hays</u>, 907 F.2d at 1456 (quoting <u>Laws</u>, 368 F.2d at 642).

The Court will not "undertake to reweigh conflicting evidence" in conducting its substantial evidence inquiry. <u>Id.</u> (quoting <u>Craig</u>, 76 F.3d at 589). But, that is not to say that the Court cannot affirm an ALJ's decision whenever it finds that the ALJ relied upon an impermissible justification.    Rather, the Court must only find, after discounting the impermissible justifications, that a reasonable mind might accept the remaining relevant evidence as adequate to support the ALJ's conclusion. With that in mind, the Court finds that

19

the ALJ's conclusions are supported by substantial evidence. In reaching that conclusion the Court need not, as Plaintiff argues, reweigh any evidence. Pl.'s Objs. 11, ECF No. 22.

Plaintiff argues that, in making her credibility determination concerning Plaintiff's testimony, the ALJ's decision contains misstatements of fact concerning: (1) Plaintiff's care for the 4-year old cousin who lives in her household; (2) Plaintiff's referral to a pain specialist; and (3) Plaintiff's treatment for pain in an emergency situation. Pl's. Objs. 9-10, ECF No. Plaintiff also argues that the ALJ's credibility determination impermissibly relies on her observations of Plaintiff's physical condition at the administrative hearing. Pl's. Objs. 10-11, ECF No. 22.

First, Plaintiff testified, with respect to the care of her 4-year old cousin, that her husband is the primary caregiver. R. 51. Though the child is at school during the day, R. 51, Plaintiff never testified that she provides no care for the child. From those facts it is reasonable to conclude that Plaintiff provides at least some level of care for a child, whether on weekends, holidays, or other times when the child is not at school. Perhaps realizing the flaw in her argument, Plaintiff argues that, in any event, "it is well settled in the Fourth Circuit that sporadic and transitory activity demonstrates not ability, but inability to engage in substantial gainful activity." Pl.'s Objs. 9, ECF No. 22. This argument evidences further misunderstanding of the law. Though the ALJ may not seize upon any sporadic and transitory activity as the sole basis for his credibility determination, it is one among many factors that an ALJ may consider. By Plaintiff's own admission, the ALJ looked to a litany of factors, including Plaintiff's own statements and objective medical evidence in the record. It was entirely proper for the ALJ to consider Plaintiff's statements concerning this child's care in making a credibility determination.

Second, Plaintiff argues that the ALJ incorrectly states that Plaintiff was not referred to any specialists for pain. Pl.'s Objs. 9-10, ECF No. 22. In a paragraph that lists a number of

20

reasons the ALJ found Plaintiff's testimony not credible, see R. 23, Plaintiff seized on one statement. The Court agrees with Plaintiff that the record reflects that she was referred to specialists at a variety of times during her treatment. See e.g., R. 228, 238, 238-39, 291, 297, 304. Plaintiff, however, fails to note that one of these referrals, to a hematogist/oncologist, was for shingles, not pain. See R. 238. On the page following the statement challenged by the Plaintiff, the ALJ discussed one of the treatments by a specialist, the epidural injection treatment from Dr. Fox. See R. 24. There was, however, no evidence that Plaintiff ever went to any of the other specialists to which she was referred. See R. 228. Thus, the ALJ's decision demonstrates that the ALJ took into account the treatments that Plaintiff actually received.

Third, Plaintiff alleges error because the ALJ considered Plaintiff's lack of emergency treatment in making her determination. Pl.'s Objs. 10, ECF No. 22. Social Security 96-7p requires that the ALJ make her determination based on all of the information on the record. Although the guidelines may not require or imply that a history of emergency treatment or a history of work with a pain specialist is required, that does not bar the ALJ from considering that evidence.

Finally, Plaintiff objects to the ALJ's reliance on her observation of Plaintiff at the hearing, which Plaintiff describes as the "sit and squirm" test. Pl.'s Objs. 10, ECF No. 22. Although ALJs cannot limit their consideration to a plaintiff's appearance at a hearing, observing a plaintiff as part of the ALJ's credibility determination is appropriate as long as the plaintiff's appearance is one factor among many considered. See Lewis v. Bowen, 823 F.2d 813 (4th Cir. 1987); Sinclair v. Barnhart, 2005 U.S. LEXIS 9192 at 8 (W.D. Va. 2005). In this case, the ALJ considered a number of factors in making her credibility determination, and Plaintiff's appearance was only one of the numerous factors discussed in the decision. R. 23-35. The

21

ALJ's determination was not made based solely on the ALJ's observations at the hearing, it was made based on the totality of the evidence in the record. Therefore, the ALJ did not err in considering her observations of Plaintiff at the hearing on November 19, 2008.

The Court finds, after discounting any misstatements or impermissible considerations raised by Plaintiff's Objections, that the ALJ's credibility determination is supported by substantial evidence. The Court did not reweigh any evidence in reaching that conclusion. Rather, it found that a reasonable mind might accept the remaining relevant evidence as adequate to support the ALJ's conclusion concerning Plaintiff's credibility. For instance, the ALJ lists a number of factors supportive of its credibility determination which Plaintiff does not dispute. The ALJ cites to the medical evidence and plaintiff's "routine and sporadic treatment" by her doctors as evidence for her finding. R. 24. There was also no evidence Plaintiff continued to receive treatment or had attempted physical therapy. R. 24. The ALJ further points out that "[t]he claimant is able to live independently and tend to her own personal needs." R. 24. Finally, the ALJ's decision is consistent with the medical opinion evidence of the state agency physicians, who found that Plaintiff is able to work at the light exertional level. R. 24, 379-383, 454-460. Based on these uncontested justifications, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

## C. THE ALJ'S ASSESSMENT OF MEDICAL OPINION EVIDENCE

Plaintiff objects to the ALJ's weighting of medical opinion evidence. Plaintiff advances two lines of argument in support of this objection. First, Plaintiff argues that, because the State Agency reviewers had not examined Plaintiff and relied on less than the full record, their opinions were only entitled to "little or no weight." Pl.'s Objs. 12-13, ECF No. 22. Second, Plaintiff argues that, pursuant to 20 C.F.R. §§ 404.1527, the ALJ failed to adequately explain her decision to afford Plaintiff's treating physicians less than controlling weight. Pl.'s Objs. 13-14,

ECF No. 22. The Court finds neither argument persuasive.

### 1. The ALJ Properly Assessed the Medical Opinion Evidence of Plaintiff's Treating Physicians and the State Agency Medical Consultant

The Court will first address Plaintiff's argument that, pursuant to 20 C.F.R. §§ 404.1527, the ALJ failed to adequately explain her decision to afford Plaintiff's treating physicians, and the state agency medical consultant, less than controlling weight. Pl.'s Objs. 13-14, ECF No. 22.

Pursuant to 20 C.F.R. § 404.1527(c), unless a treating source's opinion is given controlling weight, an ALJ is required to consider the factors set forth at §§ 404.1527(c)(1)-(6) in deciding the weight to give any medical opinion. This includes: (1) whether the source of the opinion has examined the plaintiff; (2) whether the source of the opinion has a treatment relationship with the plaintiff, and the nature, extent, and length of the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether the source of the opinion is a specialist; and, (6) any other factors that support or contradict the opinion (including "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has"). 20 C.F.R. §§ 404.1527(c)(1)-(6). Therefore, upon determining that Dr. Falik's opinion would not be afforded controlling weight, the ALJ was required to explain his decision to afford that opinion evidence "minimal weight" by reference to these factors. The Court finds that the ALJ sufficiently explained the weight afforded to the medical opinion evidence of Dr. Stark, Dr. Gubb, and Dr. Clarke by reference to these factors..

Though the ALJ fails to expressly address all of the factors listed in 20 C.F.R. §§ 404.1527(d)(1)-(6), that failure does not justify remand or overturning the decision. See Lusardi v. Astrue, 350 F. App'x 169, 172 (9th Cir. 2009) (finding ALJ's decision supported by substantial evidence, notwithstanding ALJ's failure to consider all factors, where the opinion

suggests he was considering all factors and expressly addressed specialization, the nature of the treatment relationship, consistency with the record, and other relevant factors). The ALJ's decision states that the ALJ "considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." R. 22. Thus, it is clear that the ALJ was aware of the need to consider the six aforementioned factors. In affording the opinions of Dr. Stark, Dr. Gubb, and Dr. Clarke only "little evidentiary weight," the ALJ also expressly addresses five of the six factors.

The ALJ was obviously aware of Dr. Stark and Dr. Gubb's treatment relationships with Plaintiff, having referenced their examinations of Plaintiff, R. 23, and having referred to them as Plaintiff's "treating physicians" during the course of evaluating their medical opinion evidence, R. 24. The ALJ also obviously determined that the medical opinion evidence of Dr. Stark, Dr. Gubb, and Dr. Clarke was neither supported by relevant evidence nor consistent with the record as a whole. R. 25 (affording the medical opinion evidence of these three doctors "little evidentiary weight" because their opinions were inconsistent with their own unremarkable records, notes, MRI reports, and physical examinations). The ALJ's only true mistake, therefore, was not taking express notice of whether or not each doctor was a specialist. 20 C.F.R. § 404.1527(c)(5).

After reviewing the ALJ's decision, the Court easily finds that the ALJ more than adequately explained, by reference to the factors set forth at § 404.1527, its justification for only assigning Dr. Falik's opinion evidence "minimal weight."

The Court further finds that, even if one could fault the ALJ's consideration of the § 404.1527 factors, any such error was harmless. There is no dispute that Dr. Stark and Dr. Gubb, Plaintiff's treating physicians, and Dr. Clarke, the state agency consultant, opined that

Plaintiff was in severe pain and was not able to do physical labor. See R. 23. A treating source's opinion on issues regarding the nature and severity of an impairment, however, is only to be given controlling weight if it is well supported by medically-accepted clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1526(b); Id. at § 404.1527(d); Id. at § 416.927(d)(2). It follows that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. Should the opinion be unsupported or inconsistent, the ALJ may give opinions some weight based on a number of factors, but that discretion remains with the ALJ. See 20 C.F.R. § 404.1527(c)(2); Id. at § 416.927(c)(2).

In this case, the ALJ found that each doctors' opinion was inconsistent with Plaintiff's testimony and the medical record. R. 25. The ALJ found that the opinions of Dr. Gubb and Dr. Stark concerning Plaintiff's work ability and pain were inconsistent with their own examinations and notes, all of which indicated that Plaintiff's examinations and tests were "unremarkable." R. 25. As to Dr. Clarke, the ALJ similarly found that his conclusions did not comport with his notes and examinations of the Plaintiff, which showed that there was only "minimal" and "mild" disc disease. R. 25. Along with finding that the objective medical evidence undermined the opinions of these doctors, the ALJ noted that Plaintiff's lack of regular treatment, as well as her own testimony regarding her day-to-day activities, further undermined the opinions of Plaintiff's treating physicians. R. 23-24.

The Court finds no error with the ALJ's weighting of this medical opinion evidence, and further finds that the weight assigned to the opinions of Dr. Stark, Dr. Gubb, and Dr. Clarke is supported by substantial evidence.

## 2. The ALJ Properly Assessed the Medical Opinion Evidence of the State Agency Physicians

The Court will now address Plaintiff's argument that opinion evidence of the state agency reviewing physicians, Dr. Cole and Dr. Staehr, were only entitled to "little or no weight" because they had not examined Plaintiff and relied on less than the full record. Pl.'s Objs. 12-13, ECF No. 22.

The state agency reviewers constitute non-examining sources whose opinion evidence is to be assessed under § 404.1527(e). Where a treating source is not given controlling weight, non-examining source opinion evidence must be assessed by reference to the factors set forth at 20 C.F.R. §§ 404.1527(c)(1)-(6). See 20 C.F.R. § 404.1527(e); Id. at § 404.1527(e)(2)(ii). But, ALJs "are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." Id. at § 404.1527(e)(2)(i). Though they must consider State agency medical consultant findings and opinions as opinion evidence, the "ultimate determination about whether" an individual is disabled is clearly reserved for the ALJ. Id.

The Court finds that the ALJ adequately explained her decision to afford the medical opinion evidence of the state agency reviewers "significant weight." R. 26. The ALJ was obviously aware that these examiners had not examined Plaintiff, and that their treatment relationship was necessarily limited to a review of the medical record in this case. R. 379-85; R. 454-60. The ALJ also clearly assessed whether these opinions were supported by relevant evidence and consistent with the record as a whole. R. 24. The only error which Plaintiff can argue is that the ALJ did not expressly take notice of whether or not the source opinion is a specialist, an objection which Plaintiff does not raise. 20 C.F.R. § 404.1527(c)(5). There is, moreover, nothing in the Disability Determination Examinations to suggest that the State Agency

medical consultants held relevant specialties, thus the ALJ cannot be faulted in that respect.

The Court finds no error with the ALJ's weighting of this medical opinion evidence, and further finds that the weight assigned to the opinions of the state agency reviewing physicians is supported by substantial evidence.

## V.    CONCLUSION

The Court has fully dispensed with Plaintiff's objections. For the reasons set forth herein, the Court finds that: (1) the ALJ's decision was supported by substantial evidence on the record; and (2) the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson, 434 F.3d at 653. The Court, therefore: (1) **ACCEPTS** the Magistrate Judge's Report and Recommendations, ECF No. 21; (2) **AFFIRMS** the decision of the Commissioner of the Social Security Administration; (3) **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 15; and (4) **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 18. The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

IT IS SO ORDERED.

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
March 2_, 2013

27